IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN, MILWAUKEE DIVISION

| | | |
|---|---|---|
| ROBERT LEE STINSON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | 2:09 CV 01033-CNC |
| vs. | ) | |
| | ) | |
| THE CITY OF MILWAUKEE, THOMAS | ) | |
| JACKELEN, JAMES GAUGER, other | ) | |
| AS-OF-YET UNKNOWN EMPLOYEES OF THE | ) | Judge Clevert |
| CITY OF MILWAUKEE, and DR. LOWELL | ) | |
| T. JOHNSON, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

NOW COMES Plaintiff, ROBERT LEE STINSON, by and through his attorneys, LOEVY & LOEVY, and complaining of Defendants, CITY OF MILWAUKEE, POLICE OFFICERS THOMAS JACKELEN AND JAMES GAUGER, OTHER AS-OF-YET UNKNOWN EMPLOYEES OF THE CITY OF MILWAUKEE, and DR. LOWELL T. JOHNSON, alleges as follows:

### Introduction

1.   Robert Lee Stinson was wrongfully convicted of a murder that he did not commit.  The then-twenty-one-year-old was forced to spend 23 years of his life falsely incarcerated and branded as a murderer.

2.   Mr. Stinson was convicted solely on the basis of faulty "bitemark" evidence, which has since been entirely discredited.

3.    Fortunately, DNA evidence, along with updated forensic bitemark analysis, conclusively proved Mr. Stinson's innocence. On January 30, 2009, Mr. Stinson's conviction was overturned and he was finally released from prison.  The State then dismissed all the charges against Mr. Stinson in the face of the overwhelming evidence of his innocence.

4.    By all accounts a quiet and gentle man, Mr. Stinson must now attempt to make a life for himself without the benefit of over two decades of life experiences.  This lawsuit seeks redress for his injuries.

## Jurisdiction and Venue

5.    This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

6.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331.  Venue is proper under 28 U.S.C. § 1391(b).  The events giving rise to this complaint occurred in this judicial district.

## The Parties

7.    Robert Lee Stinson is a 45 year-old resident of Milwaukee, Wisconsin.  Mr. Stinson was born and raised in Milwaukee.

8.    Before his arrest and incarceration, Mr. Stinson was living with his family and was in the process of applying for a

job.  Additionally, at that time, Mr. Stinson had little exposure to the criminal justice system:  His only prior conviction was a misdemeanor offense when he was 18 years old, for which he was fined approximately $284.

9.    Defendants Thomas Jackelen and James Gauger (hereinafter "Defendant Officers"), are current or former police officers with the City of Milwaukee Police Department.  Each of the Defendant Officers is sued in his individual capacity, and each acted under color of law and in the scope of his employment in engaging in the actions alleged in this Complaint.

10.  Defendant City of Milwaukee is a municipal entity that employs or employed the Defendant Officers, including the as-of-yet unknown Defendants.

11.  Defendant Dr. Lowell T. Johnson is a dentist in Milwaukee, Wisconsin.  At all times relevant to this action, Dr. Johnson was a state actor insofar as he was alternately, jointly engaged with the Defendant Officers in conducting the investigation that led to Mr. Stinson's wrongful conviction, conspired with the Defendant Officers to secure Mr. Stinson's wrongful conviction, was serving a public function and/or was given the authority by the Defendant Officers to identify the perpetrator of the murder for which Mr. Stinson was wrongfully convicted.  Defendant Officers and Defendant Johnson will collectively be referred to as "Individual Defendants."

## The Murder

12.  Early in the morning on November 3, 1984, the body of 63 year-old Ione Cychosz was discovered in an alley near her home in Milwaukee.  Ms. Cychosz's body was partially nude:  She was dressed only in a bra and blue shirt, which had been pulled over her head and bunched up behind her neck, as well as her socks and one shoe.  Her body was covered in mud and leaves.

13.  When the police found Ms. Cychosz's body, it had numerous bite marks on it, including on her breasts, abdomen and pubic area.  Ms. Cychosz was also covered in bruises and lacerations, and one of her teeth had been knocked out. According to the medical examiner, her death was caused by internal injuries resulting from a severe beating.

## Police Investigation

14.  In the days immediately following Ms. Cychosz's death, the police canvassed the neighborhood looking for potential witnesses.  Among the many persons they spoke to was Robert Lee Stinson.  Mr. Stinson explained that he was out at a party with friends on the night of the murder, then went to the corner store and eventually went home to sleep.  He told the police who he was with and the approximate time he was with them.

15.  The police also spoke to a number of persons in the area that they identified as potential suspects.  For example, the police spoke with Robert Jenkins, who they located sleeping

in his car less than an hour after Ms. Cychosz's body was found. Mr. Jenkins could not tell the police where he had been, he had visible scratches on his hands and he had a pair of sweatpants in his car that had mud and leaves caked on them just as did Ms. Cychosz's body.

### The Wrongful Arrest of Robert Lee Stinson

16.  On or about November 3, 1984, the Defendant Officers contacted a local odontologist, Dr. Lowell T. Johnson, to examine the bite marks on the victim's body.  The Defendant Officers met with Defendant Johnson on or about November 15, 1984, and Defendant Johnson explained his findings that the person responsible for the bitemark had a missing upper lateral incisor – *i.e.*, tooth number seven.  The upper lateral incisor is one of the upper four front teeth.

17.  Following that meeting, the Defendant Officers began focusing their search on persons with missing front teeth, which Mr. Stinson had.

18.  Despite his lack of a criminal record, the police decided to focus their investigation on Robert Lee Stinson.  Mr. Stinson was an easy target:  He lived near the victim. Moreover, the Defendant Officers were particularly interested in Mr. Stinson because they believed that he had wrongly escaped criminal prosecution for a previous murder that they had tried

to pin on him, but failed to because Mr. Stinson had nothing to do with that crime either.

19. As a result, and unbeknownst to Mr. Stinson, the Defendant Officers with the assistance of Defendant Johnson manipulated the evidence to fit Mr. Stinson. Although Mr. Stinson had a strong alibi, which was corroborated by multiple persons, the Defendant Officers secured a search warrant to take molds of his teeth. The Defendant Officers did not request warrants to take molds of the teeth of any of the other possible suspects.

## The Alleged "Bitemark" Evidence

20. The problem, however, was that Mr. Stinson's dentition did not match up to Defendant Johnson's original findings regarding the bite marks made by the perpetrator. As shown below, Mr. Stinson had an intact tooth where the perpetrator had a missing tooth, and Mr. Stinson was missing a tooth where Defendant Johnson's findings indicated that the perpetrator's tooth should be intact.

 

Figure 1: Police sketch of perpetrator's dentition (missing upper lateral incisor)

Figure 2: Robert Lee Stinson's dentition (missing front tooth)

21.   Rather than continue to search for the true perpetrator, or take dental molds of the other potential suspects, the Individual Defendants manipulated the evidence so that the bitemark evidence appeared to correlate with Mr. Stinson's dentition.  For example, Dr. Johnson issued a report indicating that Mr. Stinson's dentition matched that of the person who inflicted the bitemarks on the victim to the exclusion of all other individuals.  The Individual Defendants' manipulation of the evidence and the manner in which that manipulation was undertaken was never disclosed to Mr. Stinson or his defense team.

## Mr. Stinson's Trial

22.   Mr. Stinson had a three-day trial, after which he was found guilty of the murder of Ione Cychosz.  The only evidence that the State mustered against Mr. Stinson was the false bitemark testimony.  The State could not tie Mr. Stinson to any of the evidence located at the crime scene or to a motive and

never identified any witnesses who could place Mr. Stinson anywhere other than where Mr. Stinson was at the time of the murder: at a friend's party, at a nearby store and in his home.

23. Mr. Stinson testified at trial protesting his innocence and describing his whereabouts. Although he also called multiple alibi witnesses to corroborate his whereabouts, Mr. Stinson was convicted and sentenced to life in prison based solely on the manipulated bitemark evidence.

### Mr. Stinson's Exoneration

24. Throughout his incarceration, Mr. Stinson maintained his innocence. With the assistance of the Wisconsin Innocence Project, Mr. Stinson was able to secure the forensic science to back up his claim: He had the "bitemark" evidence re-examined and DNA testing done on the clothing that Ms. Cychosz was wearing at the time she was murdered. All of this evidence exonerated him, and helped him prove his innocence.

25. As to the bitemarks, Mr. Stinson had a panel of forensic odontologists examine the evidence that Defendant Johnson presented at trial. That panel determined that there was no correlation between Mr. Stinson's dentition and the bitemarks found on the victim. As such, Mr. Stinson was excluded as a possible suspect.

26. DNA testing done on various items of Ms. Cychosz's clothing similarly exonerated Mr. Stinson. The Wisconsin Crime

Laboratory found a consistent male DNA profile on four separate areas of the victim's pullover.  Testing on other cuttings revealed mixture profiles consisting of male DNA from at least four different men.  Mr. Stinson was conclusively excluded as a source of any of the male DNA profiles that were generated.

28.  With the new bitemark and DNA evidence, Mr. Stinson petitioned for a new trial.  The Milwaukee District Attorney's office agreed that the bitemark and DNA evidence invalidated his conviction and joined the petition.

28.  On or about January 30, 2009, the circuit court vacated Mr. Stinson's conviction and sentence.  He was released from the Lisbon Correctional Center later that day.

29.  On or about July 27, 2009, the State dismissed all charges against Mr. Stinson in a manner indicative of his innocence.

### Mr. Stinson's Damages

30.  Mr. Stinson spent 23 years in prison for a crime that he did not commit.  Mr. Stinson must now attempt to make a life for himself outside of prison without the benefit of over two decades of life experiences, which normally equip adults for that task.

31.  Additionally, the emotional pain and suffering caused by losing 23 years in the prime of his life has been substantial.  During his wrongful incarceration, Mr. Stinson was

stripped of the various pleasures of basic human experience, from the simplest to the most important, which all free people enjoy as a matter of right. He missed out on the ability to share holidays, births, funerals and other life events with loved ones, the opportunity to fall in love, marry and to raise a family, to pursue a career, and the fundamental freedom to live one's life as an autonomous human being.

32. As a result, Mr. Stinson has suffered tremendous damage, including extreme emotional distress, physical suffering and financial loss.

## Count I -- 42 U.S.C. § 1983

### Due Process

33. Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

34. As described more fully above, all of the Individual Defendants, while acting individually, jointly and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

35. In the manner described more fully above, the Individual Defendants deliberately withheld exculpatory evidence, as well as fabricated false reports and other evidence, thereby misleading and misdirecting the criminal prosecution. Absent the totality of this misconduct, the

prosecution of Plaintiff could not and would not have been pursued.

36.   The Individual Defendants' misconduct directly resulted in the unjust criminal conviction of Plaintiff, thereby denying him his constitutional right to a fair trial, and a fair appeal thereof, in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

37.   As a result of this violation of his constitutional right to a fair trial, Plaintiff suffered injuries, including but not limited to emotional distress, as is more fully alleged above.

38.   The Defendant Officers' misconduct, as described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

39.   Defendant Johnson's misconduct, as described in this Count, was objectively unreasonable and was undertaken with deliberate indifference to Plaintiff's constitutional rights. In the alternative, Defendant Johnson's misconduct was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

40.   The misconduct described in this Count was undertaken pursuant to the policy and practice of the Milwaukee Police

Department to pursue wrongful convictions through profoundly flawed investigations and coerced evidence. In this way, the Defendant City of Milwaukee violated Plaintiff's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

41. These widespread practices, so well-settled as to constitute *de facto* policy in the Milwaukee Police Department, were able to exist and thrive because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

42. The widespread practices described in the preceding paragraphs were allowed to flourish because the City declined to implement sufficient training and/or any legitimate mechanism for oversight or punishment.

## Count II – 42 U.S.C. § 1983

### Failure to Intervene

43. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

44. In the manner described above, during the constitutional violations described above, one or more of the Individual Defendants stood by without intervening to prevent the misconduct.

45. These Individual Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

46.   As a result of the Individual Defendants' misconduct, Plaintiff suffered injuries, including but not limited to emotional distress, as is more fully alleged above.

47.   The Defendant Officers' misconduct, as described in this Count, was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

48.   Defendant Johnson's misconduct, as described in this Count, was objectively unreasonable and was undertaken with deliberate indifference to Plaintiff's constitutional rights. In the alternative, Defendant Johnson's misconduct was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

49.   The misconduct described in this Count was undertaken pursuant to the City of Milwaukee's policy and practice in the manner described in the preceding paragraphs.

## Count III -- 42 U.S.C. § 1983

### Conspiracy to Deprive Constitutional Rights

50.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

51.   After the murder at issue, the Individual Defendants reached an agreement amongst themselves to frame Plaintiff for the crime, and to thereby deprive Plaintiff of his

constitutional rights, all as described in the various Paragraphs of this Complaint.

52.    Independently, before and after Plaintiff's conviction, each of the Individual Defendants further conspired, and continues to conspire, to deprive Plaintiff of exculpatory materials to which he was lawfully entitled and which would have led to his more timely exoneration of the false charges as described in the various Paragraphs of this Complaint.

53.    In this manner, the Individual Defendants, acting in concert with other unknown co-conspirators, including persons who are not members of the Milwaukee Police Department, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

54.    In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

55.    As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated, and he suffered financial damages, as well as severe emotional distress and anguish, as is more fully alleged above.

56.    The Defendant Officers' misconduct, as described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

57.   Defendant Johnson's misconduct, as described in this Count, was objectively unreasonable and was undertaken with deliberate indifference to Plaintiff's constitutional rights. In the alternative, Defendant Johnson's misconduct was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

58.   The misconduct described in this Count was undertaken pursuant to the policy and practice of the Milwaukee Police Department in the manner described more fully in preceding paragraphs, and was tacitly ratified by policymakers for the Defendant City of Milwaukee with final policymaking authority.

59.   As a result of this violation, Plaintiff suffered injuries, including but not limited to emotional distress, as is more fully alleged above.

## Count IV -- 42 U.S.C. § 1983

## Supervisor Liability

60.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

61.   The constitutional injuries complained of herein were proximately caused by a pattern and practice of misconduct, which occurred with the knowledge and consent of those of the Defendant Officers who acted in a supervisory capacity, such that these officers personally knew about, facilitated, approved, and/or condoned this pattern and practice of

misconduct, or least recklessly caused the alleged deprivation by their actions or by their deliberately indifferent failure to act.

62. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

63. The misconduct described in this Count was undertaken pursuant to the City's policy and practice in the manner more fully described above.

64. As a result of this violation, Plaintiff suffered injuries, including but not limited to emotional distress, as is more fully alleged above.

## Count V — State Law Claim

### Intentional Misrepresentation

65. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

66. As described more fully above, Defendant Johnson made a representation to the police and prosecution that Mr. Stinson's dentition matched that of the perpetrator to the exclusion of all other suspects.

67. Defendant Johnson's statement was not true, but the police and prosecution relied on it nevertheless to prosecute and convict Mr. Stinson of the murder of Ione Cychosz.

68.   Defendant Johnson knew that his statement regarding the purported match between Mr. Stinson's dentition and perpetrator's dentition was untrue and/or he was reckless in making that representation.

69.   In addition, in making that representation, Defendant Johnson intended to deceive the police and/or prosecution.

70.   As a result of this misrepresentation, Plaintiff suffered injuries, including but not limited to emotional distress, as is more fully alleged above.

**Count VI – State Law Claim**

**Negligent Misrepresentation**

71.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

72.   As described more fully above, Defendant Johnson made a representation to the police and prosecution that Mr. Stinson's dentition matched that of the perpetrator to the exclusion of all other suspects.

73.   Defendant Johnson's statement was not true, but the police and prosecution relied on it nevertheless to prosecute and convict Mr. Stinson of the murder of Ione Cychosz.

74.   As a result of this misrepresentation, Plaintiff suffered injuries, including but not limited to emotional distress, as is more fully alleged above.

## Count VII – State Law Claim

## Negligent Infliction of Emotional Distress

75.  Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

76.  In the manner described more fully above, by manipulating the bitemark evidence to inculpate Plaintiff, Defendant Johnson caused Plaintiff severe emotional distress.

77.  In doing so, Defendant Johnson's conduct fellow below the applicable standard of care and was the cause-in-fact of Plaintiff's injuries.

78.  As a result of Defendant Johnson's conduct, Plaintiff suffered injuries, including severe emotional distress, as is more fully alleged above.

## Count VIII – State Law Claim

## Intentional Infliction of Emotional Distress

79.  Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

80.  In the manner described more fully above, by wrongfully inculpating Plaintiff in a crime he did not commit, Defendant Johnson intended to cause emotional distress.

81.  In doing so, Defendant Johnson's conduct was extreme and outrageous and caused Plaintiff severe, disabling emotional distress.

82.  The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

83.  As a result of this misconduct, Plaintiff sustained injuries, including emotional pain and suffering, as is more fully alleged above.

## Count IX– State Law Claim

## Malicious Prosecution

84.  Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

85.  Defendant Johnson caused Plaintiff to be improperly subjected to judicial proceedings for which there was no legitimate probable cause.  These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were ultimately terminated in Plaintiff's favor in a manner indicative of innocence.

86.  Defendant Johnson accused Plaintiff of criminal activities knowing those accusations to be without genuine probable cause, and he made statements to the police and prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

87.  Defendant Johnson also fabricated evidence and withheld the manner in which that evidence was fabricated

88.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

89.   As a result of this misconduct, Plaintiff sustained injuries, including emotional pain and suffering, as more fully alleged above.

## Count X – State Law Claim

### Indemnification

90.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

91.   Wisconsin law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

92.   The Defendant Officers are or were employees of the Milwaukee Police Department, and acted within the scope of their employment in committing the misconduct described herein.

93.   In addition, Dr. Lowell T. Johnson was an agent of the Milwaukee Police Department, and acted within the scope of his agency in committing the misconduct described herein.

WHEREFORE, Plaintiff, ROBERT LEE STINSON, respectfully requests that this Court enter judgment in his favor and against the Defendants, CITY OF MILWAUKEE, THOMAS JACKELEN, JAMES GAUGER and OTHER AS-OF-YET UNKNOWN EMPLOYEES OF THE CITY OF MILWAUKEE, and DR. LOWELL T. JOHNSON, and awarding compensatory damages, costs and attorneys' fees, along with punitive damages against each of the Individual Defendants in their individual capacities along with whatever additional relief this Court deems appropriate.

**JURY DEMAND**

Plaintiff, ROBERT LEE STINSON, hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

_____

Arthur Loevy
Jon Loevy
Michael Kanovitz
Russell Ainsworth
Gayle Horn
LOEVY & LOEVY
312 N. May Street
Suite 100
Chicago, IL 60607
Ph: (312) 243-5900
Fx: (312) 243-5902