UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN, MILWAUKEE DIVISION

ROBERT LEE STINSON,
          Plaintiff,

v.                                    Case No.: 09 CV 01033

THE CITY OF MILWAUKEE,
JAMES GAUGER,
other AS-OF-YET UNKNOWN EMPLOYEES
 OF THE CITY OF MILWAUKEE,
DR. LOWELL T. JOHNSON, and
DR. RAYMOND D. RAWSON,
          Defendants.

**DEFENDANTS' RULE 702 MOTION #4 ON THE TESTIMONY OF PLAINTIFF'S EXPERT C. MICHAEL BOWERS, DDS: MOTION TO PRECLUDE DR. BOWERS FROM OFFERING ANY OPINION ON THE INTENT OR STATE OF MIND OF ANY OF THE DEFENDANTS**

**FACTS**

For the purpose of the instant Rule 702 Motion, defendants hereby reference and adopt the Statement of Facts set forth in their Rule 702 Motion #1 on the testimony of plaintiff's expert C. Michael Bowers, DDS.

**F.R.E. 702 AND THE DAUBERT STANDARD**

The admissibility of expert testimony is governed by Federal Rule of Evidence (F.R.E.) 702 and the Supreme Court's seminal decision in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993). See also, *United States v. Garcia Parra*, 402 F.3d 752, 758 (7th Cir. 2005) ("At this point, Rule 702 has superseded *Daubert*, but the standard of review that was established for *Daubert* challenges is still appropriate.").

F.R.E. 702 provides:

1

**Rule 702. Testimony by expert witnesses.**
A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
   a. the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
   b. the testimony is based on sufficient facts or data;
   c. the testimony is the product of reliable principles and methods; and
   d. the expert has reliably applied the principles and methods to the facts of the case.

*Daubert* sets forth a nonexclusive list of factors or guideposts that a court should consider in its analysis:

1. Whether the theory can be, and has been verified by the scientific method through testing;
2. Whether the theory has been subjected to peer review;
3. The known or potential error rate;
4. The general acceptance of the theory in the scientific community.

*Chapman v. Maytag Corp. (In re Chapman)*, 297 F.3d 682, 687 (7th Cir. 2002).

In addition to the factors enumerated by the Supreme Court in *Daubert*, the Advisory Committee Notes to Rule 702 promulgated in conjunction with the 2000 amendments to that rule, relate that both before and after *Daubert*, courts have also found other factors relevant in determining whether expert testimony is sufficiently reliable to be considered by the trier of fact. These factors include the following:

(1) Whether experts are "proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." …
(2) Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion. …
(3) Whether the expert has adequately accounted for obvious alternative explanations. …
(4) Whether the expert "is being as careful as he would be in his regular professional work outside of his paid litigation consulting."
(5) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

Advisory Committee Notes to the 2000 Amendments to Rule 702. (Citations omitted).

2

In considering whether to admit expert testimony, district courts employ a three-part framework that inquires whether: (1) the expert is qualified by knowledge, skill, experience, training or education; (2) the reasoning or methodology underlying the expert's testimony is reliable; and (3) the expert's testimony will assist the trier of fact in understanding the evidence or determining a factual issue. *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893-94 (7th Cir. 2011).

The district court functions as a gatekeeper with respect to testimony proffered under Rule 702 to ensure that the testimony is sufficiently reliable to qualify for admission. *Mihailovich v. Laatsch*, 359 F.3d 892, 918 (7th Cir. 2004). Whether to admit expert testimony rests within the discretion of the district court. *GE v. Joiner,* 522 U. S. 136, 142, 118 S. Ct. 512, 517 (1997). The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard by a preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.,* 561 F.3d 698, 705 (7th Cir. 2009).

## ARGUMENT

### I. OPINIONS AT ISSUE

Dr. Bowers, in his report, makes numerous statements, some of which imply that Dr. Johnson and Dr. Rawson deliberately manipulated their opinions, and some of which flat-out so state. For example, in ¶¶ 9, 11, and 16 of his report, Dr. Bowers asserts that Dr. Johnson and Dr. Rawson utilized methods of comparison that were not "scientifically reliable," and that they should have known this in 1985, implying that Dr. Johnson and Dr. Rawson had deliberately arrived at "incorrect" opinions in 1985. In ¶¶ 18-20 and in ¶¶ 25-30 of his report, Dr. Bowers flat out states that Dr. Johnson and Dr. Rawson "went out of their way" to "manipulate" or to "fit" Stinson's teeth to the bite marks. He alleges that Drs. Johnson and Rawson "concocted" an

3

explanation for their opinions, and that they arrived at opinions that were "knowingly misleading." On the final page of his report, Dr. Bowers states, in black and white:

> For the reasons explained above, it is my opinion to a reasonable degree of scientific certainty as a forensic odontologist that Johnson and Rawson knowingly manipulated the bite mark evidence and Stinson's dentition to appear to "match" when there was in fact no correlation between Stinson's teeth and the bite marks inflicted on Cychosz' body.

Bowers Report, *Aff of JJF*, *Ex. A*.

Because Dr. Bowers lacks any basis in training, education, or experience that would qualify him to render an expert opinion attributing a specific intent or state of mind to any other individual; because such opinions are unhelpful and invade the province of the jury; and further because Seventh Circuit case law is unequivocal that an expert cannot reliably offer an opinion on the intent or state of mind of another individual, Dr. Bowers must be precluded from offering any opinions at trial stating or implying that Dr. Johnson and Dr. Rawson "deliberately manipulated" their opinions, or that they "deliberately" arrived at incorrect conclusions.

## II. DR. BOWERS HAS NO EDUCATION, TRAINING, OR OTHER BASIS TO QUALIFY HIM AS CAPABLE OF PROVIDING RELIABLE TESTIMONY ON THE INTENT OR STATE OF MIND OF ANOTHER INDIVIDUAL.

Though he has offered the opinion that Dr. Johnson and Dr. Rawson "knowingly manipulated their opinions" on the bite mark evidence, Dr. Bowers conceded at his deposition that he has no education or training, nor can he identify any methodology that would qualify him to offer an opinion on the intent or the state of mind of another individual. He concedes that he is not a psychologist, and thus cannot point to any coursework in which he has participated that would qualify him to render an opinion on the subjective intent of another individual. Bowers Depo, p. 135, *Aff of JJF, Ex. F*. Nothing that he studied in dental school qualified him to opine upon the subjective intent of another individual. *Id.* at p. 136, *Aff of JJF, Ex. F*. No training that

he received in his medical education program at USC in 1980 and 1981 qualified him to opine upon the subjective intent of another person. *Id.* at p. 138, *Aff of JJF, Ex. F*. Nothing in Dr. Bowers' JD program at the Ventura College of Law provided training that would qualify him to opine upon the subjective intent of another person. *Id.* at p. 139, *Aff of JJF, Ex. F*. Dr. Bowers could point to no textbook, article or treatise upon which he relied for the foundation to qualify him to offer opinions on the state of mind or the subjective intent of another person. Bowers Depo, pp. 140-41, *Aff of JJF, Ex. F*. Dr. Bowers cannot identify any methodology that he used to arrive at his opinions that Dr. Johnson and Dr. Rawson somehow "knowingly" manipulated their expert opinions back in 1985. Bowers deposition, p. 142, *Aff of JJF, Ex. F*. Moreover, this case is the first one in which Dr. Bowers has ever offered an opinion that another person "deliberately manipulated" bite mark opinions, and he could not identify any other expert who, to his knowledge, had ever offered a similar opinion. *Id.* at pp. 142-43, *Aff of JJF, Ex. F*. Dr. Bowers concedes that he cannot identify any methodology to test his opinion that Dr. Johnson and Dr. Rawson "deliberately manipulated" their opinions, nor could he identify any peer-reviewed publication that would support such an opinion. *Id.* at pp. 143-44, 147, *Aff of JJF, Ex. F*.

Dr. Bowers offers opinions on the intent of Dr. Johnson and Dr. Rawson in arriving at and communicating their respective expert opinions back in 1985, yet he cannot point to anything that would provide him with a basis in education, experience or training to provide a reliable opinion on the intent or state of mind of another individual.

**III.  THE LAW IS CLEAR THAT "EXPERT" OPINIONS GOING TO THE STATE OF MIND OR SUBJECTIVE INTENT OF ANOTHER PERSON SHOULD NOT BE ALLOWED.**

5

Numerous district courts within the Seventh Circuit have concluded that opinions offered by a proposed "expert" relative to the intent or state of mind of another person are not admissable. In *United States Gypsum Co.v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 768 (N.D. Ill., 2009), the plaintiff claimed that the defendant corporation had stolen confidential information relating to wallboard manufacture. The defendant corporation moved under Rule 702 and *Daubert* to exclude the testimony of one of plaintiff's forensic computer experts on the basis that his report contained impermissible opinions on the mental state of various defendants. The district court agreed, granting the *Daubert* motion:

> There is nothing before the court to suggest that Florez is particularly qualified to understand the mental attitudes of others. Even assuming he were, he is able to render an opinion on intent only by drawing inferences from the evidence. Such opinions merely substitute the inferences of the expert for those the jury can draw on its own. "'Testimony that does little more than tell the jury what result to reach 'is unhelpful and thus inadmissible, and testimony regarding intent – essentially an inference from other facts –' is even less likely to be unhelpful to the trier of fact.'"

*Id.* at 775 (citations omitted).

With respect to another expert in the case, the district court in the *U.S. Gypsum* case went on to note:

> As explained earlier with respect to Florez's proffered testimony, a computer forensics expert is not particularly qualified to draw conclusions as to mental state. Even if Reisman were, his opinion rests solely on inferences derived from other facts in evidence, namely Spear's testimony. Any inference of intent or willfulness will be made by the trier of fact, and neither party's expert will be permitted to attempt to supplant the jury's proper determination with his own unsupported speculation. Reisman may attest to the underlying facts…, but he will not be permitted to speculate as to whether the transfer of USG information was intentional or inadvertent.

*Id.* at 777.

In *Dahlin v. Evangelical Child & Family Agency*, No. 01 C 1182, 2002 U.S. Dist. LEXIS 24558 (N.D. Ill Dec. 18, 2002), *Aff of JJF, Ex. W,* the plaintiffs were adoptive parents who sued

6

the defendant agency for damages alleging fraud, malpractice and breech of fiduciary duty stemming from the defendant agency's nondisclosure of information about an adopted child's biological parents. Rule 702 motions were brought relative to the offered expert testimony of several psychologists. The district court held that one of the proposed experts would be barred from offering an opinion that the defendant's actions constituted "fraud." The court noted that a finding of fraud requires proof of the defendant's intent, and even assuming that the proposed expert had the qualifications to determine someone else's intent, the court was required to analyze whether the expert opinion would assist the jury, and if so, whether its probative value was outweighed by its danger of unfair prejudice. *Id.* at 9, *Aff of JJF, Ex. W*. The court went on to note that the proposed expert could render an opinion regarding the defendant's intent only by drawing inferences from the evidence, and it determined that the proposed expert was no more qualified than an ordinary juror to draw those inferences. *Id.* at 10, *Aff of JJF, Ex. W.*

*Goldberg v 401 N. Wabash Venture Llc, No. 09 C 6455,* 2013 U.S. Dist. LEXIS 7491; (N.D. Ill, Jan. 18, 2013), *Aff of JJF, Ex. X,* involved an action arising out of a dispute over the sale of two hotel condominium units in the Trump International Hotel and Tower in Chicago, Illinois. The plaintiff claimed that the defendants unlawfully lured her into signing purchase agreements through misrepresentation. The defendants moved to bar the testimony of one of plaintiff's experts, who had offered an opinion on the state of mind of the defendants. The court concluded:

> As the court stated at the hearing, Levin has no specialized knowledge or experience to support his analysis or conclusion that the Trump defendants "misrepresented" information. Although Rule 704 allows an expert to opine on ultimate issues in a case, which would include misrepresentation here, such an opinion must still meet the admissibility requirements of the Rules.…Specifically, Rule 702 requires an expert to be qualified.…Levin, however, lacks sufficient qualifications to meet this requirement regarding his opinion that the Trump Defendants "misrepresented" information.

7

> As with Opinions four and five, the jury is as capable as Levin to evaluate the evidence and determine whether the Trump Defendants affirmatively misrepresented information.…
>
> Indeed, Levin has no knowledge of the mental state of the Trump Defendants when they created these materials, and has no expertise to assess whether they intentionally included the alleged misrepresentations in these materials. Levin may not, therefore, opine as to whether the Trump Defendants had the intent to misrepresent information in their materials.

*Id.* at 24 and 15. *See also George v. Kraft Foods Glob., Inc.,* 800 F. Supp.2d 928 (N.D. Ill 2011) (holding that any portion of an expert report that would suggest that the defendants acted with a particular state of mind is inadmissible because such testimony is speculation).

Dr. Bowers oversteps his role as an expert when he proports to render an opinion that Dr. Johnson and Dr. Rawson "deliberately" manipulated their conclusions or "deliberately" arrived at incorrect opinions. Dr. Bowers likely goes so far because Mr. Stinson's attorneys are well aware that simply asserting that the opinions of Dr. Johnson and Dr. Rawson were incorrect in 1985 would not be sufficient to support Mr. Stinson's claim of a constitutional violation. As a result, Dr. Bowers goes a step further, blithely offering unsupported (and unsupportable) opinions that unequivocally attribute nefarious intent to Dr. Johnson and Dr. Rawson. Dr. Bowers has no education, training, or experience that would allow him to render such opinions on intent or state of mind, and the law is squarely contrary to his attempt to offer such opinions.

Defendants therefore request an order in limine striking those parts of Dr. Bowers' report that either intimate or state an opinion that goes to the intent or state of mind of the defendants, and further request an order to preclude Dr. Bowers from offering any opinions at trial that Dr. Johnson or Dr. Rawson "intentionally falsified"

8

their opinions, that they "concocted a conclusion," that they "went to extreme efforts" to deliberately make Mr. Stinson's dentition fit the bite mark patterns, or any similar testimony that would suggest intent or state of mind.

Dated this 6th day of November, 2018.

                OTJEN, GENDELMAN, ZITZER, JOHNSON
                  & WEIR, S.C.
                Attorneys for Defendant Dr. Lowell T. Johnson

                s/ Jason J. Franckowiak
                Jason J. Franckowiak, State Bar No. 1030873
                Email: jfranckowiak@otjen.com

**P.O. ADDRESS:**
20935 Swenson Drive
Suite 310
Waukesha, WI 53186
Ph: 262 777-2200

Dated this 6th day of November, 2018.

                MILWAUKEE CITY ATTORNEY'S OFFICE
                Attorneys for Defendants James Gauger & City of Milwaukee

                s/ Jan A. Smokowicz
                Jan A. Smokowicz, State Bar No. 1008429
                Email: jsmoko@milwaukee.gov

**P.O. ADDRESS:**
200 E. Wells Street, Room 800
Milwaukee, WI 53202-3551
Ph: 414 286-2601

Dated this 6th day of November, 2018.

        SIESENNOP & SULLIVAN
        Attorneys for Defendant Dr. Raymond Rawson


        s/ Ellison F. Hitt
        Ellison F. Hitt, State Bar No. 1085269
        Email: EFH1@s-s-law.com

**P.O. ADDRESS:**
111 W. Pleasant St., Suite 110
Milwaukee, WI 53212
Ph: 414 223-1720