UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ROBERT LEE STINSON,

   Plaintiff,

  v.            Case No. 09-cv-1033-pp

CITY OF MILWAUKEE,
JAMES GAUGER,
DR. LOWELL T. JOHNSON,
and DR. RAYMOND D. RAWSON,

   Defendants.

---

**CIVIL TRIAL MATERIALS RELATING TO JURY _VOIR DIRE_,
JURY SELECTION, AND PRELIMINARY INSTRUCTIONS**

---

Honorable Pamela Pepper
June 17, 2019

I.      **PRELIMINARY MATTERS**

A.      <u>Introduction</u>

Welcome to the federal courthouse, and to Room 222. My name is Pam Pepper, and I'm a district court judge. Today, we begin a civil trial in <u>Robert Lee Stinson v. City of Milwaukee, James Gauger, Dr. Lowell T. Johnson and Dr. Raymond D. Rawson</u>, Case No. 09-cv-1033. To my right is Kris Wrobel, my courtroom deputy, who'll be helping me during the trial. To my left is _____, our court reporter. You've met our courtroom security officer, Ed Graham. We will begin by selecting a jury. If, during the jury selection process, you need to use the restroom or need water or have any other needs, Mr. Graham is the person to see.

B.      <u>Jury Selection Process</u>

We begin the trial by selecting a jury. For this trial, we'll be selecting **12** jurors. There are several steps to the jury selection process.

In the first part of the jury selection process (called the *voir dire*), I will ask you questions. Your answers to these questions will allow the parties to get to know you, and to determine whether any of you have had experiences or feelings that might interfere with your ability to be fair and impartial in this case.

This is a civil case. Each party in a civil case has a right to a fair, impartial and unbiased jury. The jury selection process is designed to preserve and insure that right. Each of us, because of our experiences, background, education, and relationships with others, has developed certain attitudes,

opinions, philosophies, biases, sympathies and prejudices. No two of us think alike.

What we do, where we work, where we live, all tell something about who we are. I'm going to ask you questions about those things. The reason that we ask those questions is so that the parties and their attorneys may decide whether they believe there is anything about you or your background or experience that might influence you in the case.

In this country, we all have the right to believe whatever we like and to make decisions as we see fit. Outside of this courthouse, you can make decisions and judge people on any basis you choose—opinions about wealth, occupation, political party, religious affiliation, hair color, race, size, sex, national origin—whatever you think is important. As a human being, I have deeply-held opinions, and I suspect you have them, too. But I have taken an oath that says that as a judge, I will, to the very best of my ability, put my private views aside and decide cases on the facts and the law, and not on my personal views or biases.

If you are selected as a juror in this case, you must take an oath to do the same. The question that the parties and I must answer in jury selection is whether any of you have particular biases, such that you should not sit on the jury in this particular case. So through your answers to my questions, the lawyers and I get to know you a little bit, so that we can determine whether we believe you can be fair and impartial in this case. And you need to know a little about the case, so that you can make your own judgment about whether you

3

should sit as a juror in it. As I tell you what I believe the case is about, I ask that you think about whether you feel there is any reason that you should not serve on this jury.

Many, if not all of us, have biases that we do not even recognize—"implicit biases." We are influenced by information without even realizing it. It is hard to recognize these biases, and to set them aside. But it helps to be aware that, while I do not believe that I am biased against a person of a particular gender or race or background, I may unknowingly be influenced by those factors. Being aware helps us guard against making decisions based on implicit bias. I ask you to be aware, throughout the jury selection process (and, if you are selected, throughout the trial), that you may be influenced by implicit, or unconscious biases, and try to set those biases aside.

The second part of the jury selection process is the challenges for cause. That means that any of the parties can ask me to excuse a potential juror from service because the party believes that juror cannot or will not be fair and impartial in deciding the facts and applying the law in this case. A lawyer who wants to challenge a juror for cause will provide me with the reasons that he or she believes the juror can't be fair and impartial. I, myself, may suggest excusing a juror, if I believe the juror's answers show that he or she cannot be fair and impartial to all parties.

The third part of the process involves what are called peremptory challenges. Each party gets a certain number of peremptory challenges. When a party makes a "peremptory" challenge to a juror, that means the lawyer does

4

not have to state a reason for the challenge. The law allows parties to use peremptory challenges to excuse jurors, not only to ensure that there will in fact be a fair jury, but also to ensure that each side *believes* that the jury is a fair jury. The lawyers will make their challenges, and discuss them with me if necessary, privately.

Please don't feel insulted, or upset, if you are excused from service. As I indicated, each of us has certain attitudes, opinions, biases, *etc*. Each of us would find it hard to be fair in a particular kind of case. Even if I excuse you in this case, you may be perfectly qualified to sit on another case. On the other hand, even if you end up on the jury in this case, you may be excused from service in some future case.

Now—for your general information, the name of this case is <u>Robert Lee Stinson v. City of Milwaukee, James Gauger, Dr. Lowell T. Johnson and Dr. Raymond D. Rawson</u>. Robert Lee Stinson is the plaintiff—the person who filed the lawsuit. The City of Milwaukee, James Gauger, Dr. Lowell T. Johnson and Dr. Raymond D. Rawson are the defendants whom Robert Lee Stinson has sued.

In 1984, a woman named Ione Cychosz was murdered; there were bite marks on her body. Defendant James Gauger was one of the detectives who investigated the homicide. Plaintiff Robert Lee Stinson was arrested and charged with the murder. Defendant Lowell T. Johnson, a forensic odontologist, analyzed the bite marks on the victim and the plaintiff's dentition, as did defendant Raymond D. Rawson, another forensic odontologist. The state

5

presented the bite mark evidence at trial, alleging that evidence linked the plaintiff to the murder. As a result of that evidence, the plaintiff was convicted and spent twenty-three years in prison.

In 2009, DNA evidence exonerated Robert Lee Stinson. In 2010, the state dismissed all charges against him. That same year, DNA evidence from the victim's clothing was matched to a man named Moses Price, who confessed to the homicide of Ione Cychosz and was convicted in 2012.

The plainitff has alleged that defendants Gauger, Johnson and Rawson deprived him of his constitutional due process right to a fair trial by deliberately withholding evidence and fabricating false reports and other evidence. He has alleged that Gauger, Johnson and Rawson failed to intervene to prevent the violation of his constitutional rights. The plaintiff has alleged that these defendants agreed among themselves to frame him and to deprive him of his constitutional rights. The plaintiff also has alleged that the defendants violated state law by intentionally making false representations to the police or the prosecutors, by both negligently and intentionally inflicting emotion distress on him and by maliciously prosecuting him.

The defendants all deny each of these claims.

I'm going to start by asking Ms. Wrobel to administer an oath to you, in which you promise to answer truthfully the questions I ask you. Your obligation to answer truthfully is a powerful one. At this point, the lawyers know little about you, and your answers to my questions help us determine whether you are qualified to serve as a fair juror in this case. It is critical that

6

you answer candidly and completely, because your answers bear on the parties' right to a fair trial. If you'd prefer to answer any question outside the hearing of your fellow jurors, please let me know, and the lawyers and I will hear your question at sidebar.

[Ms. Wrobel administers the oath.]

MS. WROBEL: Do you solemnly swear that you will truthfully answer all questions that shall be asked of you, touching upon your qualifications as a juror, in the case now called for trial, so help you God?

## II. *VOIR DIRE*

1. The parties and I understand that jury service disrupts your usual routine, and is inconvenient to many of you. But it is a service that our government asks of us as citizens, and it is critical to a fair and just legal system. There are people who feel they are too busy, or are sick, or have moral or religious objections to serving. Those are not necessarily reasons for me or the parties to excuse a juror, but it is important that the parties know if you are not willing to serve.

Is there anyone here who believes that he or she should not be on the jury no matter what the case is about, or who the parties or witnesses are?

2. Before I start asking you questions about your qualifications to serve as jurors, I'll ask each of you to stand and provide a little background information about yourself. We have listed the background questions on the screens in front of you—you can refer to the screens as a reminder of the information I'm going to ask each of you to provide. That information includes:

a. Your juror number—not your name;

b. Your age;

c. The community or neighborhood where you live (not your street address), and if you've lived there less than ten years, any other places you've lived during that time;

d. Your marital status;

e. Your occupation, as well as that of your spouse or significant other, if you have one. If you or your spouse are retired, share with us what you or your spouse did before you retired; and

f. Your educational background – how far you went in school.

3. [**Counsel for the plaintiff—Ms. Lewis Donnell or Ms. Horn or whoever will be introducing the people at the plaintiff's table**], could you please introduce yourself, anyone at counsel table, your client, and tell us the name of your law firm. Does anyone here know [**names of the parties at the plaintiff's table**]? Does anyone know anyone employed at the law firm of Loevy and Loevy in Chicago? Does anyone know Robert Lee Stinson?

4. [**Counsel for the City and defendant Gauger—Mr. Smokowicz and whoever may be with him**], could you please introduce yourself, tell us where you work and introduce your client? Does anyone know [**counsel for the City and defendant Gauger**]? Anyone who works at the Milwaukee City Attorney's Office? Does anyone know James Gauger?

5. [**Counsel for defendant Johnson—Mr. Frankowiak/anyone with him**], could you please introduce yourself, tell us where you work and introduce your client? Does anyone know [**Mr. Frankowiak/other counsel**]?

8

Anyone who works at the Otjen Law Firm in Waukesha? Does anyone know Dr. Lowell T. Johnson?

6.	[**Counsel for defendant Rawson—Mr. Sullivan/Ms. Hitt/Mr. Van Nostrand**], could you please introduce yourself, tell us where you work and introduce your client? Does anyone know [**people at defendant Rawson's table**]? Anyone who works at the Siesennop & Sullivan firm here in Milwaukee? Does anyone know Dr. Raymond D. Rawson?

7.	[**Counsel for the plaintiff**], could you tell the jurors the names of the witnesses you anticipate calling, the cities in which they live and how they are employed? Does anyone know any of these individuals?

8.	[**Counsel for the City and defendant Gauger**], could you tell us the names of the witnesses you anticipate calling, the cities in which they live and how they are employed? Does anyone know any of these individuals?

9.	[**Counsel for defendant Johnson**], could you tell us the names of the witnesses you anticipate calling, the cities in which they live and how they are employed? Does anyone know any of these individuals?

10.	[**Counsel for defendant Rawson**], could you tell us the names of the witnesses you anticipate calling, the cities in which they live and how they are employed? Does anyone know any of these individuals?

11.	Did any of you [**you being the prospective jurors**] know each other before assembling this morning for this jury panel? If so, who do you know, and how do you know them?

12.     The attorneys estimate that this trial will last eight business days—until sometime on Wednesday of next week, June 26. Are there any of you who have travel, doctor's appointments, or other commitments that you cannot change, that would prevent you from attending and committing to paying attention for the next three days?

13.     Our trial days start as early as 8:30 a.m. some days, and, unless something unusual happens, end between 5:00 and 5:30 p.m. During each trial day, we take a morning break, a lunch recess and an afternoon break. We also may take breaks when the lawyers and I need to discuss legal issues. Is there anyone who has any health problems—including hearing problems, disabilities, illnesses or medication issues—which would prevent you from being able to sit in the courtroom for the next five days and to hear, review and process the evidence?

14.     Have any of you read anything in the newspaper or on the Internet, or heard anything on the radio, television or Internet, about this lawsuit before you came here today?

15.     Have any of you ever served on a jury before—either in state or federal court?

   a.     Was it a criminal case or a civil case?

   b.     Were you the foreperson?

   c.     Did the jury reach a verdict, you don't have to tell us what the verdict was?

   d.     Was there anything about that experience that would make it difficult for you to be fair and impartial in this case?

10

16.     Has anyone ever been a party to a lawsuit—in other words, have you ever sued anyone, or had someone sue you? (Excluding minor traffic or divorce/custody cases.) If so, please tell us what kind of lawsuit it was, and how long ago it took place. Was there anything about that experience that would make it difficult for you to be fair in this case?

17.     Have you, a member of your family, or any close friends ever been involved in a claim or lawsuit against a police or law enforcement agency or its officers?

       a.     What were the circumstances of the claim or lawsuit?

       b.     What was the name of the case?

       c.     What was your role in that claim or lawsuit?

18.     Have any of you ever been a witness, or an expert witness, in any kind of proceeding where you testified under oath? If so, please tell us about that experience.

19.     Is there anyone who, because of particular feelings about our judicial system—including judges and lawyers—would not be able to serve as a fair and impartial juror?

20.     Is there anyone who has strongly positive or negative feelings about the criminal justice system—in Wisconsin, or nation-wide—that would make it difficult for you to be fair, given the facts of the case that I've described to you?

21.     Do you have any relatives or close friends who are lawyers? Who, and what kind of law do they practice? Do they talk to you about their work? Is

there anything about your relationship with that person, or the things you have discussed with him or her, that would make it difficult for you to be fair and impartial in this case?

22.     Do you have any relatives or close friends who work in law firms or legal offices—perhaps as paralegals, administrative assistants or investigators? Who, and what kind of work do they do? Do they talk to you about their work? Is there anything about your relationship with that person, or anything they've told you about their work, that would make it difficult for you to be fair and impartial in this case?

23.     Have any of you ever attended law school or received legal training, including paralegal training or legal training for your job?

24.     Do any of you have any relatives or close friends who work in a court system—in a clerk's office, or a judge's office, or for a court reporting service? Who, and what kind of work do they do? Do they talk about their work with you? Is there anything about your relationship with that person, or anything they've told you about their work, that would make it difficult for you to be fair and impartial in this case?

25.      Have you or any family members or close friends been employed as a law enforcement officer?

26.     Have you or any family members or close friends had any police or law enforcement training? If so, please describe that training.

27.    Do any of you have any feelings about law enforcement in general or the Milwaukee Police Department specifically, that would make it difficult for you to be fair to all the parties—the plaintiff and each of the defendants?

28.    Would anyone find it hard to give the testimony of a law enforcement officer the same weight that you would give the testimony of a civilian witness, or any other witness?

29.    Have you, any member of your family or any close friend had any interactions with law enforcement agency or law enforcement officers—whether positive or negative—that would make it hard to be fair in a case involving law enforcement officers?

30.    Have you, any relatives or close friends been employed as correctional officers at a jail or prison? Who, and what kind of work do they do? Do they talk about their work with you? Is there anything about your relationship with that person, or anything they've told you about their work, that would make it difficult for you to be fair and impartial in this case?

31.    Have you, any member of your family, or any close friend ever been arrested or detained by a law enforcement officer? Is there anything about that experience that would make it difficult for you to be fair in this case, based on the facts that I've described to you?

32.    Have you, a relative or a close friend ever been detained in a jail or a prison? Is there anything about that experience that would make it difficult for you to be fair to all parties here?

13

33.    Have you, a relative or a close friend ever visited someone in a jail or prison? Is there anything about that experience that would make it difficult for you to be fair to all the parties here?

33.    Have you, a close relative or friend ever been convicted of a crime that resulted in incarceration in a jail or prison? Is there anything about that experience that would make it difficult for you to be fair to all the parties—the plaintiff and the defendants?

34.    Have you, a close relative or friend ever served in the military? [Follow up for those who have served—what branch, and were you honorably discharged?]

35.    Are you or any members of your immediate family familiar with the 2600 block of North 7th Street in the City of Milwaukee? If so, how are you familiar with it?

36.    Have you, a close relative or close friend ever been a physician? If so, in what area of practice?

37.    Have you, a close relative or close friend ever been a dentist? If so, what kind of dentistry?

38.    Have you, a close relative or a close friend ever had any medical or dental training? If so, what was the extent of that training?

39.    Do any of you have any strong feelings—positive or negative— toward the medical or dental field, or toward doctors or dentists generally, that could make it difficult for you to be fair in a case in which some of the parties are doctors/dentists?

40.     Would any of you find it hard to give the testimony of a doctor or dentist the same weight that you would give the testimony of any other witness?

41.     Have you, a close relative or friend ever had a particularly positive or negative experience with a physician, dentist or other health care provider that might make it difficult for you to be fair in a case where some of the parties are doctors/dentists?

42.     Have you, a close relative or close friend ever filed a lawsuit or made a claim against a physician, dentist or medical practitioner? Please describe the lawsuit or the claim.

43.     Do any of you have strong positive or negative feelings about suing medical professionals that could make it difficult for you to be fair in a case where someone has sued medical professionals?

44.     In civil cases, plaintiffs ask juries to award money damages if they find in the plaintiff's favor, and the plaintiff will be asking you to award damages if you find in his favor. Do any of you hold any strong beliefs that would prevent you from awarding money damages to the plaintiff if you find that he has proved the elements of his claims?

45.      Do any of you have any moral or philosophical objections to sitting in judgment of another person?

46.     I realize you don't know much about this case, but is there anything that you have heard up to this point that would make it difficult for you to be fair and impartial to each of the parties?

15

47.     At both the beginning and the end of the trial, I am going to give you instructions on the law that governs this case. Is there anyone who is unable to follow that law, and those instructions, even if you do not agree with them?

48.     Is there anyone who would like to tell me or the parties anything outside the hearing of the other jurors that might impact your ability to be a fair and impartial juror in this case?

49.     Do any of you have any reason at all—perhaps something I haven't asked you about—why you could not sit as a fair and impartial juror in this case?

50.     Is there anything about this case that reminds you of something in your own life? Is there anything about that similarity that would make it hard for you to be fair to both the government and the defendant in this case?

51.     Here's my final question: If you were Robert Lee Stinson, or the City of Milwaukee, or James Gauger, or Lowell T. Johnson, or Raymond D. Rawson, is there any reason that you would not want someone with your particular views or frame of mind sitting on your jury?

III.     **POST-*VOIR DIRE* PROCEDURE**

A.     Consult with the lawyers—remove any jurors challenged for cause.

B.     The plaintiff has three (3) peremptory challenges and the defendants have three (3) peremptory challenges. [**The court anticipates that the City and defendant Gauger will share three (3) challenges, and that defendants Johnson and Rawson will share three (3) challenges. All told,**

16

**the plaintiff and the defendants will exercise a total of nine (9) peremptory strikes**.] **Twelve** jurors will serve. From the first twenty-one (21) jurors remaining after the for-cause strikes, the parties make their strikes by alternating—the plaintiff, then the City/Gauger, then Johnson/Rawson. After each set of parties has exercised three strikes, we should have twelve remaining jurors.

  C. Ed Graham gives the final list to the court. If, for any reason, either side has not exercised all its strikes, the court will eliminate the appropriate number of jurors' names from the bottom of the list.

  D. I hand the list back to Ms. Wrobel, who reads the numbers of the selected jurors. I then instruct the venire as follows:

    1. If Ms. Wrobel called your number and you are in the jury box, please remain seated.

    2. If Ms. Wrobel called your number and you are in the back of the room, please move into the jury box.

    3. If Ms. Wrobel did not call your number at all, please move to the back of the room.

  E. The jurors get settled. Ms. Wrobel calls the roll of the jurors' numbers, and asks each to respond with "here" and to raise his or his hand.

  F. Ms. Wrobel administers the oath to the jury. I excuse the balance of the *venire*.

  G. I thank the jury panel for their time and cooperation. [Take a short break if necessary.]

IV. **PRELIMINARY INSTRUCTIONS:**

MEMBERS OF THE JURY

We are now ready to begin the trial. I'm going to start by giving you some instructions to help you better understand your functions as jurors and how you should conduct yourself during the trial. At the end of the trial, I will give you more detailed instructions to guide you in your deliberations, but these instructions are to guide you in participating in the trial. I am confident that if I spend a few minutes with you now, you will be able to discharge your function as a juror more intelligently and effectively, and will be able to reach a just verdict at the end of the trial.

OPENING STATEMENTS

When I have completed these opening instructions, the plaintiff may make an opening statement. After that, each of the defendants may do so. But no party is required to make an opening statement. If the lawyers do make opening statements, what they say in those statements is not evidence. The statements are introductions—road maps—to the evidence the parties intend to produce.

After the opening statements, the plaintiff will call witnesses and present evidence. Once the plaintiff is finished, each of the defendants may call witnesses and present evidence. After all the parties have presented their main cases, the plaintiff may present rebuttal witnesses and evidence, if he believes that is necessary.

18

EVIDENCE

Evidence is:

1.      Testimony of witnesses given in court, both on direct and cross-examination, regardless of who called the witness;

2.      Exhibits that I admit into the trial record; and

3.      Any facts to which the parties agreed—or stipulated—or which I have directed you to find.

Anything you may have seen or heard outside the courtroom is not evidence. You must decide the case solely on the evidence offered and received at trial.

Do not allow sympathy, prejudice, fear, or public opinion to influence you. You should not be influenced by any person's race, color, religion, national ancestry, or gender.

ORDER OF PROOF

Normally, the plaintiff presents his witnesses and exhibits supporting his case before the defendants introduce any evidence, but sometimes we make exceptions to accommodate a witness or to deal with certain legal issues. If that happens, I will try to alert you that a witness is testifying out of order. After the plaintiff presents his case, each defendant may present witnesses and evidence. If one or more of the defendants presents evidence, the plaintiff then may offer additional evidence to rebut the defendants' case. The party or lawyer who called the witness to testify questions that witness first, then the opposing party or parties may cross-examine the witness.

OBJECTIONS

At times during trial, one of the lawyers may object to another lawyer's effort to introduce evidence. That is okay—it is part of a lawyer's job to object if the lawyer believes I should not admit the evidence. I don't allow the lawyers to argue about objections to evidence in your presence. I'll base my ruling on objections solely on the law, which is why you, as jurors, are not involved in that process. You must not infer from any ruling that I make or from anything that I say during the trial that I hold any views for or against either party. We will, of course, do what we can to keep the number and length of these discussions to a minimum, but you should remember the importance of the case you are here to decide, and should be patient even though the case may, at times, seem to be going slowly.

During the trial, I will sustain objections to questions, which means I won't allow the witness to answer, or if the witness already has answered, I will instruct that you must disregard the answer and dismiss it from your minds. You should not draw any inference from an unanswered question, and you may not consider that testimony in reaching your decision. This is because the law requires that you make your decision solely upon the competent evidence before you.

CREDIBILITY OF WITNESSES

If somebody were to ask me what a juror's most important function is, I would say, without hesitation, that it is to weigh the credibility, or believability, of the witnesses. You cannot intelligently discuss a verdict without first

collectively discussing the testimony that you have heard. It is most important for you to consider, as you listen to the testimony of the various witnesses, whether they are believable. But I urge you not to prejudge the credibility of any witness until you have heard all of the testimony in the case.

In judging the credibility of a witness, you should remember that if the witness' testimony does not match the facts as they occurred, it could be because the witness is lying, or because the witness did not accurately see or hear what the witness is testifying about, or because the witness' recollection of the event is faulty, or because the witness did not give clear testimony.

There is no magical formula for evaluating the witness' testimony; however, you should bring with you to this courtroom all your experience and background from your own lives. In everyday life, you determine for yourselves whether what other people say to you is reliable or not. The same tests that you use in your everyday life are the tests which you apply in your deliberations here; whether the witness has an interest in the outcome of the case; the bias or prejudice of a witness, if there is any; the witness' demeanor and behavior on the stand; the opportunity that the witness had to observe the facts; and how probable the witness' testimony is when you view it in light of all the other evidence in the case. These are all important factors to consider when you determine the overall weight and credit that you give to that witness' testimony.

If it appears that there is a discrepancy in the evidence, you will have to consider whether there is a way to reconcile that apparent discrepancy. If that

is not possible, you must determine which of the conflicting versions you will

accept as appealing more to your good judgment and common sense.

CONDUCT DURING TRIAL

As far as your own conduct during the trial, I must caution you that you

may not discuss this case, either among yourselves or with anyone else, during

the trial. In fairness to the parties, you must keep an open mind throughout

the trial, reaching your conclusion only during the final deliberations after all

the evidence is in, and you have heard the attorneys' closing arguments and

my instructions on the law. Only then will you be able to intelligently and fairly

exchange your views with the other jurors in trying to reach a decision.

It is a normal human tendency to talk with people with whom you come

into contact each day about what is going on in your life. I appreciate that it is

tempting when you go home in the evening to discuss this case with your

spouse, or other members of your household, or friends. Do not give in to this

temptation. Do not let any third person discuss this case in your presence. If

anyone tries to talk to you about this case, despite your telling them not to, you

should report that fact to Mr. Graham—who will alert me—as soon as you are

able.

Also, during the time you serve on this jury, do not speak, whether in or

out of the courtroom, to any of the parties, their lawyers or any witnesses. I

don't just mean that you cannot talk to them about the case; you may not

speak to them at all, even to pass the time of day. They won't talk to you,

either—if they see you in a hallway or on the sidewalk, they will not greet you

or acknowledge you. They are not trying to be rude. They are following my instructions, just like you must follow them, to ensure the absolute impartiality they are entitled to expect from you as jurors.

Because you will be deciding this case solely on the evidence received along with my instructions on the law, you must not make any independent investigation of the facts or the law.

This means, for example, that you must not read or listen to media accounts, including anything on social media. You may not visit a location you hear about during the testimony or conduct experiments. You may not Google or otherwise look up things you've heard about at the trial online, or research anything you've heard about in books or magazines or other resources.

I do not permit jurors to ask questions of the witnesses or of the lawyers during the trial. If you are unable to hear a witness or a lawyer, please raise your hand immediately, or let Mr. Graham know at a break, so that we can correct the problem. If you need to communicate with me during the trial, you should give a signed note to Mr. Graham, and he'll give it to me to consider.

<u>CLOSING ARGUMENTS</u>

After the parties have introduced all the evidence and both parties have rested (or finished their cases), the parties will have an opportunity to present you with closing arguments, or summations. I will talk more about the function of a closing argument after you've heard all the evidence. For now, I will tell you that while the closing arguments are very important, they are not evidence, and you are not bound by them. The function of a closing argument is to give the

parties the opportunity to explain their view of the evidence, and to tell you what conclusions they believe you should draw from the evidence.

After the lawyers finish their closing arguments, I will instruct you on the rules of law applicable to the case, and then you will go back to the jury room to deliberate. Your function as jurors is to determine what the facts are, and to apply the rules of law I give you to the facts. The conclusion you reach will be your verdict. You will determine what the facts are from all the testimony that you hear and from the exhibits that I admitted into evidence. You are the sole and exclusive judge of all the facts—not me, not the lawyers, not anyone else. I will make every effort to preside impartially during this trial and not to express any opinion concerning the facts. If, from something I say or do, you believe that I have expressed an opinion, you must disregard it. Any views I may have on the facts are completely irrelevant.

I do caution you that under your oath as jurors, you are duty bound to accept the rules of law that I give you, whether you agree with them or not. As the sole judges of the facts in this case, you must determine which of the witnesses you believe, what portion of their testimony you accept, and what weight you attach to it.

TAKING NOTES

If you would like to, you may take notes to help you remember what the witnesses said. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note-taking distract you so that you do not hear other answers by witnesses. When you

24

leave the courtroom during breaks, you will leave your notebooks on your chairs; Mr. Graham will make sure they are there for you when we resume. When you leave at night, we will secure your notes, and no one will read them. At the end of the trial, we will destroy your notes, and no one will be allowed to read them before they are destroyed.

Notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been. Whether you take notes or not, each of you must form and express your own opinion as to the facts of the case.

If you do not take notes, you should rely upon your own memory of what was said and not be overly influenced by the notes of other jurors.

V.     **OTHER MATTERS**

Before the lawyers present their opening statements, there are a few matters that I would like to discuss with you:

A.     Hours;

B.     Promptness;

C.     Court facilities (jury room, no lunch room);

D.     Smokers/outside breaks for non-smokers;

E.     Parking (today and subsequent days);

From this point forward, you must not enter the courtroom unless Mr. Graham tells you to do so and comes with you. This is to avoid your coming into the courtroom during proceedings that do not involve the jury, or during proceedings in other cases.

25