UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROBERT STINSON,

    Plaintiff,

v.                                  Case No. 2:09-cv-0133-PP

CITY OF MILWAUKEE, et al.,

    Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
PROPOSED CURATIVE INSTRUCTIONS A & B**

1. **Plaintiff Requests The Court Grant His Proposed Curative Instruction A Regarding Argument that Plaintiff Did Not Have A Bite Mark Expert in 1984/1985**

One may wonder why this Court spent an exhaustive amount of resources to decide motions in liming and Daubert briefs if Defendant Johnson was going to blatantly ignore such rulings. The Court's decision on the Parties' Daubert motions granted Plaintiff's motion, dckt. 190 at 10, barring any opinion testimony whether cross examination or hiring a competing expert is best practice for challenging an expert or can cure a fabrication claim. Dckt. 287 at 21 ("To the extent that this motion asks the court to bar the defendants from asking Golden, Senn and Brumit for a *legal* conclusion about effective techniques for rebutting expert witness testimony, the court granted the motion at February 7, 2019, hearing."). In its analysis in its Dauber order, the Court made the clear connection between its grant of Plaintiff's motion on hiring a competing expert and the Morgan Report. The Court's order made clear that the Morgan Report lacked any

relevance to this trial and was barred. Similarly, the Court granted Plaintiff's motion *in limine* No. 1, dckt. 213, barring the Morgan Report.

Dr. Johnson's arguments made during his opening statement were in clear violation of several of the Court's pre- trial orders, including, the following:

- "Dr. Bowers will tell you that all of the criticism that he makes today could also have been made in 1984 and 1985. Well, you know, his ability to do that is questionable, but that's certainly what he will tell you. *One might therefore wonder* from this why Mr. Stinson did not have an expert of his own back in 1985 especially given you will learn that his attorney had a list of potential experts prior to the trial. One might wonder." pg. 51 (emphasis added). *See* Exhibit A (Transcript of Dr. Johnson's Openings).

- "There will be experts who will testify. If there were any flaws in Dr. Johnson's work, certainly that could be brought out in cross examination. It could be criticized by experts at the time. That's the way it was done then. That's the way it's done now." pg. 43.

- "DA Blinka will tell you that prior to that December-1985 trial, he provided Mr. Stinson's counsel with a list containing the names and addresses of dozens of ABFO certified witnesses any one of whom was capable of reviewing bite marks and offering opinions like those provided in this case by Dr. Johnson and Dr. Rawson. You'll learn that Dr. Johnson actually made an offer to Attorney Blinka to sit down with any expert who might potentially be named by the defense and was willing to bring Mr. Cadle and sit down and explain exactly what he had done, the conclusions he reached, how he reached those conclusions, what he did to reach those conclusions, not exactly the behavior of an individual engaging in a clandestine attempt to deliberately frame a man he did not know for literally no logical reason." 44-45.

- "He'll also testify that he answered the questions that were put to him both by the DA and by Mr. Stinson's own attorney at the trial to the best of his ability and under oath. And yes, you will hear that Mr. Stinson was represented by counsel at the trial. Dr. Johnson will tell you that he testified at that trial about the work that he did. He explained the methodology. He showed the jury exactly what he did. He'll tell you that all of the trial exhibits setting forth the work he did were, in fact, offered and accepted into evidence without objection by Mr. Stinson's counsel. You will not hear any expert or you will not hear any evidence that an expert testified at the trial on Mr. Stinson's behalf because none did." pg. 46.
- "Despite the fact that Mr. Stinson's attorney had in his possession a lengthy list containing the names and addresses of dozens of highly qualified ABFO diplomates who were capable potentially of serving as experts. You'll learn that no expert testimony was offered on Mr. Stinson's behalf by his lawyer at the 1985 trial." pg. 46-47.
- "You will ask yourself how was that not noted in 1984? It is copiously documented in the record. It was all presented at trial. The jury saw it. Mr. Stinson's attorney saw it. Any expert for Mr. Stinson, if he had one, would have seen it. Why? It wasn't hidden. None of the evidence in this case was hidden in 1984 or today. It was all right there." pg. 54.

` A curative instruction is warranted here because Plaintiff cannot rebut Defendant Johnson's arguments made during his opening statement to answer why he did not have and bite mark expert during his criminal trial. Without such a curative instruction from the Court, the jury will improperly assume that Plaintiff's failure to have an opposing expert is to reason for his unfair trial.

## 2. Plaintiff Requests The Court Give Plaintiff's Proposed Curative Instruction B Regarding Defendant Johnson's Argument That It Is Unfair To Judge Him By Today's Standards

Plaintiff also requests that the Court instruct the jury with Plaintiff's Proposed Curative Instruction B. Defendant Johnson's counsel also made argument that it was unfair to judge Dr. Johnson by today's standards in the field of forensic odontology in clear violation of this Court's Daubert rulings. Defendant Johnson argued:

- "You'll learn that Dr. Johnson's opinions were rendered as an expert 35 years ago based upon the guidelines that existed at the time, the state science that existed at the time. That's important because I predict that some of the experts who may be called to testify by Mr. Stinson's attorneys in this case may attempt to blur the line between what was believed in the science of forensic odontology, what was known at the time in 1984 and what's known today or what's believed today." pg. 19-20.
- You will not be asked to decide at the end of the case whether Dr. Johnson was right or wrong. You will not be asked to decide whether Dr. Johnson properly arrived at his analysis or whether he arrived at the correct conclusion or even whether he used even the proper methodologies. Mr. Stinson's lawyers will not argue that he violated Mr. Stinson's right to a fair trial because subjective expert opinions that he provided back in 1985 were later proven to be inaccurate 30 years later with the advent of DNA technology. pg. 49.
- Whether Dr. Johnson came to accurate conclusions after his analysis back in 1984 and 1985 is irrelevant to the issues you will be asked to decide in this trial. Whether the methods utilized by Dr. Johnson in 1985 were proper or were acceptable or correct, again

that's irrelevant to the issues you will be deciding. Whether any experts were using similar methods at the time, irrelevant. Whether any experts of decades of comfortable hindsight will be able to tell you today that they have a different opinion based on different or newer or better evidence, again irrelevant to the issues you will actually be deciding. pg. 19.

Wherefore, Plaintiff respectfully requests that the Court instruct the jury with Plaintiff's Proposed Curative Instruction B.

Dated:        6/19/2019                                    LOEVY & LOEVY

                                                           /s/ Heather Lewis Donnell
                                                           HEATHER LEWIS DONNELL
                                                           Attorney for Plaintiff

### CERTIFICATE OF SERVICE

I, Heather Lewis Donnell, an attorney, certify that on June 19, 2019, I filed a copy of Memorandum Of Law In Support Of Plaintiff's Proposed Curative Instructions A & B.

                                                           /s/ Heather Lewis Donnell