EASTERN DISTRICT OF WISCONSIN

ROBERT STINSON,

    Plaintiff,

v.                                                Case No. 2:09-cv-1033-PP

CITY OF MILWAUKEE, et al.,

    Defendants.

## PLAINTIFF'S MOTION TO RECONSIDER OF THE EXCLUSION OF LESTER FRANKLIN

### Introduction

To put this motion in context, the Plaintiff is deeply troubled by some of the actions that have occurred in the first two days of trial. Plaintiff has waited 35 years for his day in Court, and it is imperative to him—as it should be to all parties—to have a fair trial.

First, several shocking admissions were made by Defendants Johnson and Rawson's counsel during *voir dire* that illustrated a desire to pick a jury that excluded a diverse cross-section of the community. After this Court overruled Defendants' objection to beginning with the back of the venire, defense counsel informed this Court that there was "nothing objectionable" about the three African-American jurors in the back of the venire and offered a stipulation to include them as jurors so long as this Court would be willing to begin the selection process at the front-half of the panel. Of course, the front of half of the venire was completely

white. When this Court confronted the Defendants about their request, which Plaintiff believes violated *Batson* on its' own, defense counsel suggested that their race-neutral explanation for maneuvering around the more diverse section of the back venire was based on higher-education. That, of course, was simply not true.

After defense counsel made several striking admissions to this Court about an inability to strike people based on race – and offered a concession to the three African-American jurors as there was "nothing objectionable" about their qualifications – Defendants Johnson and Rawson proceeding to use their first two peremptory strikes on women of color. Defendants Johnson and Rawson first struck a woman of color – Juror #44. For their second strike, Defendants Johnson and Rawson struck Juror #47 – who they previously informed the Court that there was "nothing objectionable" about. After Plaintiff made a *Batson* challenge, defense counsel used pretextual arguments to explain away the strikes. Though expressing some concerns, this Court declined to sustain a *Batson* violation due to a lack of a pattern. Plaintiff maintains that pattern was absolutely clear from defense counsel's arguments, offer of a stipulation, and the Defendants choice of using its first two peremptory strikes on women of color. Although this Court refrained from sustaining the *Batson* violation, Plaintiff maintains that one was committed, and that the failure to sustain it is reversible error.

Defendant Johnson's litigation strategy only worsened from there. During opening statements, Defendant Johnson's counsel knowingly violated this Court's

multiple motions *in limine* rulings and Daubert holdings. See Dckt. 287 at 21, Dckt. No. 213. Ignoring these, Mr. Frankowiak argued in openings that:

> Dr. Bowers will tell you that all of the criticism that he makes today could also have been made in 1984 and 1985. Well, you know, his ability to do that is questionable, but that's certainly what he will tell you. One might therefore wonder from this why Mr. Stinson did not have an expert of his own back in 1985 especially given you will learn that his attorney had a list of potential experts prior to the trial. **One might wonder.**

Of course, this is only a small fraction of the litany of pretrial rulings that Defendant Johnson violated in opening statements, which turned out to be closing arguments. Plaintiff has outlined some of this misconduct in his recent filing for a curative instruction – but there is no instruction that will cure the infected record that exists today.

In spite of the above, this Court's first and only sanction was the ultimate sanction, and against Plaintiff no less. As is demonstrated below, this Court's exclusion of Lester Franklin, a critical witness in Plaintiff's case, is reversible error. Mr. Franklin's limited knowledge of this case is contained in a three-page police report authored by Defendant Gauger and a deposition transcript that totals 52 pages of actual testimony. Ex. 1, Franklin Dep. Tr. There is no legitimate argument that the Defendants suffer any prejudice from Plaintiff calling Mr. Franklin to testify at trial as he provided deposition testimony more than seven years ago – on July 25, 2012. Plaintiff's counsel provided Defendants with a trial

subpoena for Mr. Franklin several weeks ago – on June 6, 2019 – and at no time did any party inform Plaintiff, or this Court, that subpoenas were being improperly issued for a witness who was not listed on the pretrial report. Further, the pretrial report contains Mr. Franklin's deposition transcript, Plaintiff's Exhibit 126 – notably, an exhibit that the Defendants did not even object to. See Dckt. No. 319-A at Ex. 126 and Ex. 172.

Finally, to his credit, Defendant Gauger did not even argue to the Court that he would be prejudiced by Mr. Franklin testifying. Ex. 2, June 17, 2019 Tr. at 18. A reading of the transcript establishes the opposite, where Mr. Smokowicz informed the Court that "we are aware of Lester Franklin; however, names have come on and come off that list that is on the final pretrial report. My recollection of the Court's order at some point was the disclosure was operating was the pretrial report." Id. On this Court's own volition, prejudice was found. On that score, to the extent that this Court has concerns about whether the Defendants missed opportunities to speak with Mr. Franklin in the lead up to trial, Plaintiff's counsel has learned that the Defendants have not spoken to any of the third-parties contained on Plaintiff's Pretrial witness list. In any event, such supposed prejudice could easily be cured by the Defendants conferring with Mr. Franklin over the weekend and Plaintiff calling him as a witness on Monday.

In spite of all this, this Court has leveled the most severe sanction against Plaintiff for an inadvertent omission on a pretrial report - barring Mr. Franklin from testifying. This Court's prior ruling is not harmless and prevents Plaintiff

from litigating his case. As the Seventh Circuit has repeatedly held, the exclusion of such determinative witnesses must be infrequently resorted to because "in the normal course of events, justice is dispensed by the hearing of cases on their merits." *Musser v. Gentiva Health Services*, 356 F.3d 751, 759 (7th Cir. 2004) (internal formatting omitted) (citing *Salgado v. General Motors Corp.*, 150 F.3d 735, 740 (7th Cir. 1998)). For the reasons discussed above and below, this Court's should reverse its' earlier decision and allow for Mr. Franklin to testify in a way that will result in no prejudice to the parties.

### I. This Court's Exclusion of Lester Franklin is Unwarranted and Constitutes Reversible Error

This Court's decision to exclude Mr. Franklin is reversible error, especially where either the witness was properly disclosed or any deficiency in disclosure was either substantially justified or harmless. *See Musser*, 356 F.3d at 755; *Robinson v. Champaign Unit 4 School Dist.*, 412 Fed. Appx. 873, 877-878, No. 10–3351 (7th Cir. March 8, 2011). *Accord Design Strategy, Inc. v. Davis*, 469 F.3d 284, 298 (2d Cir. 2006) (clarifying that while typically the erroneous exclusion of a witness under Rules 26(a)(1) and 37(a)(1) requires remand, if the improper exclusion causes no harm to the fact-finder's determination or to the party seeking to admit evidence, the error may stand). Each of those factors weigh far against exclusion here.

Given the centrality of Mr. Franklin's testimony as to a key dispute at trial – whether Defendant Gauger had a motive to frame Plaintiff in 1984 due to his failed attempt to frame him in 1982-1983 for a separate crime – any erroneous exclusion would not be harmless. On this score, Defendant City of Milwaukee's opening

statements are instructive as to whether Mr. Franklin's testimony is vital to Plaintiff's claims. There, Defendant Gauger informed the jury that:

> You've heard a bit about the Rickey Johnson homicide. Mr. Johnson, you will hear some evidence or testimony we expect about this homicide, and that it occurred in 1982, but Detective Gauger was only one of the investigators in that matter. And, in fact, whatever is made of Detective Gauger's feelings about that, you will hear that he had very limited contact with Mr. Stinson. He may not have even questioned him at all in that process. You will hear that Mr. Stinson was not somebody suspected of having committed that homicide but merely having some knowledge about who did it.

Ex. 3, Draft of Defendant Gauger's Opening Statements at 2.

Contrary to what Defendant Gauger argued to the jury, Mr. Franklin's testimony will establish the opposite, namely, that Defendant Gauger was involved in critical investigatory steps in 1982 and went out of his way (including by fabricating evidence) in his attempt to frame Plaintiff and his friends. In this way, it is anticipated that Mr. Franklin will testify that Defendant Gauger showed him several photographs, including Plaintiff, and tried to obtain an identification of Plaintiff as being involved in the 1982 murder – and in fact told Mr. Franklin to pick these three individuals. According to Defendant Gauger's report – Mr. Franklin identified Mr. Stinson as being involved in the 1982 murder. It is anticipated that Mr. Franklin will testify that he never made such an identification of any of the three, and repeatedly informed Defendant Gauger and Detective

Jackelen that he could not make an identification given his distance from the shooting. Mr. Franklin is also expected to testify that after the Johnson murder case fell apart in 1983, that Defendant Gauger and his partner found him and told him that it was his fault that the criminal case against Mr. Stinson and his two friends fell apart. This evidence is critical to Plaintiff corroborating Defendant Gauger's admissions in his memoir that he would not forget the 1982 case falling apart, that he believed that he had the right guys, and that those guys got away with it due to statements changing. Put simply, it corroborates Plaintiff's argument in this case that Defendant Gauger was motivated to frame Plaintiff in 1984 as a result of his failed attempt the year prior.

In situations like this, the Seventh Circuit has repeatedly identified the following factors to consider when a district court exercises its discretion in assessing discovery sanctions:

> (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date.

*David v. Caterpillar, Inc.* 324 F.3d 851, 857 (7th Cir. 2003) (citing *Bronk v. Ineichen*, 54 F.3d 425, 428 (7th Cir.1995)); *Spray–Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1245 (7th Cir.1982)); *see also Woodworker's Supply, Inc. v.Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). Although this Court noted these factors in its' ruling, there was not a formal opportunity for Plaintiff to argue why these

factors weigh in favor of admission. In any event, a recent decision from one of this Court's sister courts, *Vraniskoska v. Franciscan Communities, Inc.*, may prove helpful in determining application of these factors given a similar fact pattern. No. 2:11–CV–308 JD, 2013 WL 4647224 (N.D. Ind. Aug. 29, 2013). Unlike here, the court refused to bar a witness who was disclosed by first name only and was additionally not timely under Fed. R. Civ. P.26(a)(1):

> though Ms. Wallace was not disclosed in a 26(a)(1) disclosure until the end of discovery, she had actually been identified and referenced in several instances throughout discovery, though only by her first name. With the benefit of its personnel records, to which Ms. Vraniskoska did not have access, Franciscan likely could have identified Ms. Wallace based on the information provided and her connection to the case. A party's disclosures must only be based on information reasonably available to it, and the duty to supplement applies only where the information was not otherwise made known to the other party. Fed.R.Civ.P. 26(a)(1)(E), (e)(1)(A). To the extent Ms. Vraniskoska violated any obligation in failing to identify Ms. Wallace more precisely, the exclusion of her declaration is unwarranted. There is no suggestion of bad faith, as plaintiff's counsel was not able to personally contact Ms. Wallace until January 2013. Any prejudice is also limited since Ms. Wallace is merely a lay witness who Franciscan could have identified themselves, and Franciscan could request leave to depose her prior to trial if necessary.

*Id.* at *5; *see also Robinson*, 412 Fed. Appx. at 877 (indicating importance of considering enumerated factors, including prejudice). In applying the four-factor test, each of the four factors overwhelmingly and entirely favor inclusion of Mr. Franklin's testimony.

    a. **Prejudice or surprise.**

As is described *supra*, the relevant inquiry is whether the Defendants suffer any prejudice from Plaintiff's failure to include Mr. Franklin in his pretrial report. As stated above, though Defendant Gauger informed the Court that the witness did not appear on the final pretrial report, he never argued that he was prejudiced by that. Ex. 2, June 17, 2019 Tr. at e.g. Instead, Defendant Gauger admitted that "we are aware of Lester Franklin" but assumed he would not be called given the final pretrial order. Again, that assumption ignores that Mr. Franklin's deposition transcript and police report are on the pretrial order and not objected to by Defendants. The reality here is that any supposed prejudice is minimal, as Defendants conducted discovery into Mr. Franklin more than 7 years ago, and where lead defense counsel for each Defendant deposed Mr. Franklin. Notably, counsel for Defendants Johnson and Rawson did not ask a single question at that deposition. Finally, as to the surprise element of this prong, the Rule contemplates is the surprise of the existence of the witness or subject of their testimony. There is no evidence here that Defendant Gauger could have been surprised by Lester Franklin when he was deposed, his trial subpoena served on

counsel weeks ago, and his exhibits (including police report and deposition transcripts) included in the Final Pretrial Report.

    **b. Ability to cure.**

As discussed *supra*, any potential prejudice that Defendants suffered here by the failure to document Mr. Franklin in the pretrial report was amply cured by their prior deposition of Franklin, Plaintiff's notifying Defendants of their intention to call Franklin as a witness on June 6, 2019, and Plaintiff's reiterating that intention on the first day of trial during voir dire. In any event, if this Court were to allow Plaintiff to call Mr. Franklin as a witness, Plaintiff would do so Monday, thus affording Defendant Gauger the ability to speak with Mr. Franklin over the the rest of the week or over the weekend. Plaintiff's counsel will provide Defendant Gauger with Mr. Franklin's contact information should they decide to meet him. Thus, any defect in Plaintiff's disclosures was or could have been easily cured by Defendants.

    **c. Disruption to trial.**

Mr. Franklin's testimony as a limited lay occurrence witness would have been straightforward, easy for the jury to understand, and would not have caused any disruption to the trial. In fact, when compared to the odontology issues, the Mr. Franklin would be the *least* "disruptive" of all witnesses at trial.

### d. Bad faith or willfulness.

This Court previously found there was no indication of bad-faith or willfulness on Plaintiff's part, and that this "factor weighs against exclusion."

## II. The Court erred in failing to consider a lesser sanction.

Even if the Court were correct to conclude that there were any deficiencies in Plaintiff's pretrial report, the Court compounded its error in this case by failing to consider a lesser and more proportionate sanction. *See Robinson*, 412 Fed. Appx. at 878 (vacating imposition of a sanction under Fed. R. Civ. P.26(a)(1) and noting "[e]ven assuming that [plaintiff] was noncompliant with Rule 26(a)(1), we cannot tell whether the district judge examined the documents [plaintiff] did submit or other relevant factors, such as the prejudice to the school district or efficacy of less-severe sanctions") (citing *The Procter & Gamble Co. v. Haugen*, 427 F.3d 727, 738 (10th Cir. 2005)); *Caterpillar, Inc.* 324 F.3d at 857-58. Assuming there was any disclosure defect, because the Court did not make any determination of the propriety of the severe sanction of exclusion, and had it done so, the Court would have been correct to impose a lesser sanction, a new trial is warranted in which Plaintiff will be entitled to present his case. Lesser sanctions that were available for the Court to consider including some monetary sanction on Plaintiff directly or on her trial counsel or discovery counsel. Either of these sanctions would have been more than sufficient.

Another Court to have considered parallel issues came to a similar conclusion that exclusion of a key witness was inappropriate although a lesser sanction was warranted. *See Hess v. Reg-Ellen Mach. Tool Corp. Employee Stock Ownership Plan*, No. 02 C 50007, 2003 WL 21209747, at *3-5 (N.D. Ill. May 22, 2003) (finding a substantially more egregious violation of discovery disclosure requirements remediable by payment of sanctions to opposing counsel). Such a penalty, while still unfounded under Fed. R. Civ. P.26(a)(1) and Seventh Circuit case law, is certainly more appropriate than exclusion of the case's most compelling sources of proof. As a remedy Plaintiff suggests only that the severe sanction of barring Mr. Franklin is unjustifiable and an abuse of discretion.

## Conclusion

For the reasons discussed above, there is absolutely no prejudice to Defendant Gauger (who is the only witness that is truly affected by this testimony) as it relates to Lester Franklin testifying. Mr. Franklin has not only been disclosed in this litigation, he was deposed as well. Mr. Franklin's deposition transcript is on the Pretrial order (as well as his police report) neither of which Defendant Gauger (nor any other Defendant) objected to. All Defendants were served with proof of service for Mr. Franklin several weeks before trial. There is still nearly a week remaining in the trial for defense counsel to confer with Mr. Franklin – though they had opted to not speak with any of Plaintiff's other third-party witnesses – so any suggestion that the lack of conferring the witness is a basis for such prejudice could

not be made in good-faith. For the reasons discussed above, Plaintiff respectfully requests that this Court allow for Mr. Franklin's testimony.

Dated:       6/19/2019            LOEVY & LOEVY

/s/ Elliot Slosar
Elliot Slosar
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I, Elliot Slosar, an attorney, certify that on June 19, 2019, I filed a copy of Plaintiff's Motion To Reconsider Of The Exclusion Of Lester Franklin

/s/ Elliot Slosar